1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>                Plaintiff,<br>     vs.<br><br>EQUESTRIAN SERVICES II, INC., a California Corporation; d/b/a Sycamore Trails Stables, a California Corporation; HFT1, LLC, a California LLC<br><br>          Defendants, | **Civil Case No. 8:20-cv-01694-JVS-JDE**<br><br>**CONSENT DECREE**<br><br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

## **CONSENT DECREE**

The following Consent Decree is entered into by and between Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") and Equestrian Services II, Inc. d/b/a Sycamore Trails Stables ("STS" or "Defendant") and HFT1, LLC ("Financial Guarantor"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS,** Coastkeeper is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS**, Coastkeeper's mission is to protect the region's water resources so they are swimmable, drinkable, and fishable for present and future generations;

**WHEREAS**, STS operates an equestrian boarding facility ("Facility") on the Property where it stables up to 450 horses year-round;

**WHEREAS,** HFT1, LLC is the property owner of 26282 Oso Road, San Juan Capistrano, CA 92675 where STS operates its equestrian stabling business;

**WHEREAS**, on or about February 10, 2020, Coastkeeper sent a letter to STS and Financial Guarantor of Coastkeeper's intention to file suit after the expiration of sixty (60) days for certain alleged violations of the federal Water Pollution Control Act pursuant to 40 C.F.R. § 135.2 ("Notice Letter") attached hereto as **Exhibit A**.

**WHEREAS,** Coastkeeper alleges that STS' operations at the Facility result in discharges of pollutants to Trabuco Creek, the main tributary to San Juan Creek, which discharges to the San Juan Creek Mouth and the Pacific Ocean ("Receiving Waters"), and further contends those discharges are regulated by the Clean Water Act, Sections 301(a), 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, HFT1, LLC has agreed to act as the financial guarantor for monetary obligations of STS set forth in this Consent Decree;

**WHEREAS**, Coastkeeper alleges that STS is in violation of the substantive and procedural requirements of the Clean Water Act;

**WHEREAS**, on April 10, 2020, Coastkeeper and STS executed a 30-day Tolling Agreement in order to facilitate dry and wet weather inspections of the facility and discuss engineering solutions to resolve Coastkeeper's Clean Water Act allegations;

**WHEREAS**, On April 10, 2020, in a letter attached hereto as **Exhibit B**, the San Diego Regional Water Quality Control Board (RWQCB) identified STS as a Medium Confined Animal Feeding Operation (CAFO) and directed STS to file a Notice of Intent (NOI) through the State Water Board's Stormwater Multiple Application & Tracking System (SMARTS) to obtain coverage under the Statewide General Permit for Storm Water Discharges Associated with Industrial Activities, Order No. 2014-0057-DWQ as amended ("Industrial General Permit" or "IGP") and develop and implement a site-specific Nutrient Management Plan (NMP) pursuant to subdivision 40 C.F.R. § 122.42(e), demonstrate a "No Discharge" condition, or apply for a Notice of Non-Applicability (NONA) under XX.C of the IGP;

**WHEREAS**, on May 8, 2020, Coastkeeper and STS executed a 30-day extension of their Tolling Agreement;

**WHEREAS**, on September 8, 2020, Plaintiff filed a complaint against STS and Financial Guarantor in the United States District Court, Central District of California(Civil Case No. 8:20-cv-01694, alleging violations of § 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and violations of the IGP at the Facility ("Complaint");

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest, and therefore choose, to resolve Coastkeeper's allegations in the Notice Letter through settlement in order to avoid the cost and uncertainties of litigation;

**WHEREAS**, Plaintiff alleges STS to be in violation of the substantive and procedural requirements of the IGP and the Clean Water Act with respect to the Facility;

**WHEREAS**, STS denies all allegations in the Notice Letter and Complaint relating

2

to the Facility;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, all actions taken by STS pursuant to this Consent Decree shall be made in compliance with all applicable federal and state laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a);

2. Venue is appropriate in the Central District of California pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within the Central District of California;

3. The Complaint states claims upon which relief may be granted pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1);

4. Plaintiffs have standing to bring this action;

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVES**

6. It is the express purpose of the Settling Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, et seq., and to resolve those issues alleged by Plaintiff in their Complaint. In light of these objectives and as set forth fully below, STS agrees to comply with the provisions of this Consent Decree, the IGP, a RWQCB approved Nutrient Management Plan (NMP), and all applicable provisions of the Clean Water Act. Specifically, STS agrees to comply with

3

Discharge Prohibitions, Effluent Limitations, and Receiving Water Limitations set forth in the IGP in the industrial and production areas.

## II.   AGENCY REVIEW AND TERM OF CONSENT DECREE

7.   Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (collectively "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to STS. In the event that the Federal Agencies object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

8.   The term "Effective Date" as used in this Consent Decree shall mean the day the Court enters this Consent Decree. If, by the end of the 45-day review period referenced in paragraph 7, *supra*, the Federal Agencies offer no objection, the Settling Parties agree to request immediate entry of this Consent Decree by the Court and if, after fourteen (14) days, the Court has not entered the Consent Decree, the Settling parties agree that any party to this agreement may request a hearing before the Court to seek entry of the Consent Decree.

9.   This Consent Decree shall terminate three (3) years after the Effective Date ("Termination Date"), unless tolled by delays as set forth in Provision 68 or there is a prior ongoing, unresolved dispute regarding STS' compliance with this Consent Decree.

## III.   POLLUTION CONTROL REQUIREMENTS

### A.   Storm Water Pollution Reduction Measures

10.   The storm water pollution control measures required by this Consent Decree shall be designed and operated to comply fully with the requirements of the IGP and STS' NMP approved by the RWQCB.

**11.     Existing Structural BMP Evaluation.**

**11.1.**  STS is not required to implement additional structural BMPs until given an opportunity to evaluate its existing structural storm water capture and treatment BMPs identified in the SWPPP.

**11.2.**  During the 2020/2021 reporting year, STS will monitor whether the existing structural storm water capture and treatment BMPs identified in the SWPPP are sufficient to capture and retain on site the ten year/24 hour storm event from the Production Area, as depicted in Exhibit C, in which case the provisions of Sections III.C and III.D shall not apply.

**11.3.**  If the BMPs identified in the SWPPP are not sufficient to capture and retain the ten year/24 hour storm event discharge from the Production Area as depicted in Exhibit C, and sampling of discharges from storm water capture BMPs reveals an average annual exceedance of a numeric limit identified in **Table 1** below, STS will prepare a Contaminant Reduction Strategy (CRS) pursuant to provision III.D.14.1.

**B.    SWPPP Implementation**

**12.**     Within fifteen (15) business days of the Effective Date, STS shall file a Notice of Intent (NOI) to Comply with the IGP.

**13.**     Before or concurrently with the filing of the NOI, STS shall submit a Nutrient Management Plan (NMP) to the RWQCB.

**C.    Numeric Limits for Areas Subject to the IGP**

**14.**     Storm water discharged from STS associated with industrial and CAFO activities shall not contain pollutants above the levels set forth in **Table 1**.

**Table 1: Numeric Limits for Discharges from Areas Subject to the IGP**

| Parameter | Limit | Test Method | Source |
|---|---|---|---|
| E-coli | 126 cfu/100 mL | SM 9221 FCE | SWRCB Bacteria Provisions |
| Total Suspended Solids | 100 mg/L | SM-2540-D | 1994 SD Basin Plan |
| Total Nitrogen (N+N) | 0.68 mg/L | SM 4500-NO3-E | 1994 SD Basin Plan; 2017 San Dieguito WQIP |
| Ammonia as N | 2.14 mg/L | SM 4500-NH3 B+C or E | IGP |
| Oil and Grease (O&G) | 15 mg/L | EPA 1664A | IGP |
| Ph | 6.0 – 9.0 | See IGP § XI.C.2 | IGP |
| Total Phosphorous | 2.0 mg/L | SM 4500 B+E | IGP |
| BOD | 30 mg/L | SM 5210B | IGP |

6

**D.    Contaminant Reduction Strategy (CRS) Requirements**

**14.1.**  The Parties acknowledge STS may sell the Facility before the Termination date of this Consent Decree. In the event a CRS is required after the conclusion of the 2020/2021 reporting year, this CRS will identify BMPs required to capture and retain the 10 year/24 hour storm event, or, in the alternative, provide a closure plan to cease equestrian activities at the Facility within twelve (12) months.

**E.    Sampling and Analysis.**

**15.**    STS will maintain a recording rain gauge capable of recording rainfall to 0.1 inches. STS shall maintain the recording rain gauge in accordance with the manufacturers' recommendations, maintain records of all maintenance and rain data, and provide such rain gauge data to Plaintiff with STS' Monitoring Report, as described below.

**16.**    STS will develop a plan for monitoring all storm water and non-storm water discharges from industrial and production areas pursuant to the requirements of this Consent Decree and the IGP.

**17.**    During the life of this Consent Decree, STS shall collect samples of storm water discharges from industrial and production areas in conformity with its Monitoring Plan included in the SWPPP and uploaded to SMARTS.

**18.**    Should STS demonstrate full compliance with all Table 1 discharge limitations for four (4) consecutive discharge events, STS may reduce sampling in compliance with the IGP, except under no circumstances shall STS be permitted to collect samples from less than four (4) discharge from areas subject to the IGP, however STS may cease sampling for any analyte identified in Table 1 following four (4) consecutive reported sampling results where the pollutant is not detected.

**19.**    STS shall comply with the analytical methods as required by this Consent Decree and as more fully described in the Monitoring Plan as well as the requirements set

forth in 40 CFR part 136. Where there is a conflict between the Consent Decree and 40 CFR part 136, the provisions of 40 CFR part 136 shall apply.

**20.**     STS shall post the complete laboratory results of all sampling required by this Consent Decree at outfalls servicing Production Areas as identified in the Monitoring Plan on SMARTS and notify Plaintiff of the posting.

**F.     Visual Observations**

**21.**     During the life of this Consent Decree, STS shall conduct and document visual observations pursuant to the IGP and as more fully described in the STS SWPPP.

**G.     Groundwater Monitoring Plan**

**22.**     During the 2020/2021 reporting year, STS shall monitor groundwater at the three designated locations identified on **Exhibit C**, which is subject to change as stated on Exhibit C.

**23.**     After the installation of the monitoring wells is completed, STS shall survey the top of each well casing for the purposes of establishing elevation of groundwater during groundwater monitoring events.

**24.**     Immediately prior to collecting groundwater samples after a rain event, STS shall measure and record the elevation of the top casing of each well to calculate the elevation of ground water. This information will be used to establish groundwater flow direction.

**25.**     STS shall collect ground water samples at the Facility 24-48 hours after four (4) QSEs.

**26.**     STS shall analyze groundwater samples for $NO_3$, phosphorous, TDS and conductivity consistent with groundwater basin plan objectives.  In addition, STS shall analyze E. Coli from Table 1.

**27.**     Should STS ground water sampling demonstrate that the combined annual averages for Nitrate ($NO_3$), Phosphorous, TDS and Conductivity for the two downstream groundwater wells minus the annual average for Nitrate (NO3), Phosphorous, TDS and

8

Conductivity for upstream well are below those set forth in the Basin Plan Ground Water Quality Objectives, STS will discontinue ground water sampling for these constituents.

28. Should STS groundwater sampling demonstrate average annual concentrations for E. Coli from the downstream wells are less than or equal to the average annual concentrations for the upstream groundwater monitoring well, STC will discontinue groundwater sampling for this constituent.

29. STS shall not be required to post groundwater sampling data to SMARTS.

30. If Coastkeeper establishes that there is a direct discharge (or a functional equivalent of a direct discharge) of infiltrated storm water from the STS property into Trabuco Creek, then Section 1.D (Contaminant Reduction Strategy) of this Consent Decree shall also apply to infiltrated storm water.

**H.** **Monitoring and Reporting Program Revisions**

31. STS shall notify Plaintiff when Annual Reports are uploaded to SMARTS.

32. STS shall revise the Monitoring Plan if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any CRS and upload the revisions to SMARTS.

33. STS shall notify Plaintiff when revised Monitoring Plans are uploaded to SMARTS. Plaintiff shall provide comments, if any, to STS within thirty (30) days of receipt of notice that the revised Monitoring Plan has been uploaded. Failure to receive comments within thirty (30) days shall be deemed conclusive evidence of approval of the Monitoring Plan by Plaintiff. STS shall incorporate Plaintiff's comments into the Monitoring Plan or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

34. This section does not prevent STS from submitting a Monitoring Plan amendment or revision to SMARTS in any way, nor does it impair STS' ability to modify the Monitoring Plan unilaterally.

**35.**     Any disputes as to the adequacy of the Monitoring Plan or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**I.     SWPPP Revisions**

**36.**     Within thirty (30) days of termination of the public review period for its NMP, STS shall amend its SWPPP to incorporate its NMP by reference.

**37.**     STS shall revise the SWPPP if there are any changes in operations, including, but not limited to, changes to storm water discharge point(s) or revisions and/or additions to the BMPs implemented pursuant to any CRS and upload the revisions to SMARTS.

**38.**     STS shall notify Plaintiff when SWPPP revisions are uploaded to SMARTS.

**39.**     Plaintiff shall provide comments, if any, to STS within thirty (30) days of receipt of notice that the SWPPP has been uploaded. Failure to receive comments within thirty (30) days shall be deemed conclusive evidence of approval of the SWPPP by Plaintiff. STS shall incorporate Plaintiff' comments into the SWPPP or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments.

**40.**     This section does not prevent STS from submitting a SWPPP amendment or revision to SMARTS in any way, nor does it impair STS' ability to modify the SWPPP unilaterally.

**41.**     Any disputes as to the adequacy of the SWPPP or revisions thereto shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section VI below.

**J.     Employee Training**

**42.**     Within thirty (30) days of the Effective Date of this Consent Decree, STS shall develop and implement a training program, in compliance with the IGP and its SWPPP. At a minimum, the Training Program shall include the following:

**42.1.** <u>Language</u>. STS shall conduct the Training Program in at least one language or languages in which all designated employees participating in the Training Program are fluent.

**42.2.** <u>Non-Storm Water Discharges</u>. STS shall train all designated employees on the prohibition of NSWDs, so that employees know what constitutes a NSWD, and how to detect and prevent non-storm water discharges to ensure compliance with this Consent Decree and the IGP.

**42.3.** <u>Best Management Practices (BMPs)</u>. STS shall train all designated employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at properties under STS's jurisdiction that are regulated under the IGP.

**42.4.** <u>Storm Water Sampling</u>. STS shall designate an adequate number of employees or contractors necessary to collect storm water samples from each outfall identified in the Monitoring Plan. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

**42.5.** <u>Visual Observation Training</u>. STS shall provide training to all designated employees regarding visual observations pursuant to this Consent Decree and the SWPPP.

**43.** Training shall be provided by a qualified individual who is familiar with the requirements of this Consent Decree and the SWPPP. The training shall be repeated as necessary to ensure that all employees assigned storm water responsibilities are familiar with the requirements of this Consent Decree and the SWPPP. All new designated staff shall receive this training before assuming responsibilities for implementing the STS' SWPPP or Monitoring Plan.

**44.**   STS shall maintain training records to document compliance with this Section and shall provide Plaintiff with a copy of these records annually if requested. These training records must indicate the date and nature of the training but are not required to disclose any employee information.

**K.**   **Monitoring and Reporting**

   **45.**   **Site Inspections**

   **45.1.**   During the Term of this Consent Decree, Defendant shall permit representatives of Coastkeeper to perform two (2) site inspections during normal operating hours ("Site Inspections") during each reporting year of the as follows: two (2) site inspections each reporting year during the life of this Consent Decree (July to June).

   **45.2.**   Coastkeeper shall provide Defendant's designated representatives at least 48 hours' notice in advance of any site inspections. For any site inspection planned to occur in wet weather, where a change in forecasted precipitation would frustrate wet weather observations and/or samples, Coastkeeper shall be entitled to reschedule the site inspection. Coastkeeper agrees to give Defendants' representatives at least fifteen (15) hours' notice of its intent to reschedule a requested wet weather site inspection.

   **45.3.**   Provided, that in the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a site inspection would be relevant to resolving the Parties' dispute, Coastkeeper may request an additional site inspection and the Parties agree to meet and confer regarding the request. Defendant shall not unreasonably deny Coastkeeper's request for an additional site inspection.

   **45.4.**   Coastkeeper representatives shall execute the liability waiver attached hereto as **Exhibit D** prior to entering the property.

   **46.**   **Document Provision**

   **46.1.**   During the life of this Consent Decree, STS shall notify Plaintiff of all documents related to compliance with the IGP and NMP at the Facility that are not posted to SMARTS, which are submitted to the Regional Board, the State Board, and/or

any state or local agency, county, or municipality. STS shall email such reports and documents to Plaintiff within ten (10) days of the date they are sent to the agencies, counties, and/or municipalities.

**46.2.**  STS shall email any correspondence related to STS' compliance with the IGP or NMP received by STS from any regulatory agency, state or local agency, county, or municipality which are not posted to SMARTs within ten (10) days of STS' receipt of correspondence. For those documents, which are posted to SMARTS, STS shall notify Plaintiff of such posting within ten (10) days of the posting.

**46.3.**  STS shall not be required to disclose any information or documents that constitute a trade secret or are subject to the Attorney Client Privilege or the Attorney Work Product doctrine.

## IV.   ENVIRONMENTAL PROJECT, ATTORNEYS' FEES AND COSTS, AND STIPULATED PAYMENTS

### A.   Compliance, Monitoring, and Oversight

**47.**   Defendant agrees to defray Coastkeeper's future monitoring of Defendant's compliance with this Consent Decree in an amount of Twenty Thousand Dollars ($20,000) within thirty (30) days of the Effective Date of the Consent Decree. Coastkeeper has provided Defendants with an explanation of compliance monitoring and oversight costs expected to be incurred during the term of this Consent Decree. All payments shall be made via wire transfer or check payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**48.**   If by June 1, 2021, STS has not given notice of their intent to cease equine and/or other animal operations at the Facility, STS shall pay Defendant's an additional Ten Thousand Dollars ($10,000) within thirty (30) days for continued monitoring and oversight for the life of this Consent Decree. Payments shall be made via wire transfer or

check payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**B.** **CSR Review Payment**

49.     In any reporting year during the life of this Consent Decree that a CSR is required by the terms set forth in herein, Defendant agrees to defray the cost of Coastkeeper's additional costs for that year related to reviewing the CSR with a CSR Review Payment of Three Thousand Five Hundred ($3,500). The payment shall be made via wire transfer or check simultaneously with the submission of the CSR, made payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery, unless payment via wire transfer, to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

**C.** **Stipulated Penalties**

50.     Defendant shall make stipulated payments of five hundred dollars ($500.00) for each failure to comply with each deadline described in this Consent Decree after five days' notice by Coastkeeper of such a failure to comply without cure. Payments shall be made to Mission Resource Conservation District. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline after five days' notice by Coastkeeper. Defendant shall provide Coastkeeper with a copy of each such payment at the time it is made. Payments shall be addressed to Mission Resource Conservation District, Attn: Darcy G. Cook, 1588 South Mission Road, Suite 100, Fallbrook, California 92028.

**D.** **Environmental Project**

51.     To remediate the alleged environmental harms alleged in the Complaint, STS agrees to make total payments of Thirty Thousand dollars ($30,000) to Mission Resource Conservation District to benefit water quality in the Mission Viejo Hydrologic Area 601.20. Payments shall be made in two installments. The first installment payment

14

of Fifteen Thousand Dollars ($15,000) shall be due within six (6) months of the Effective Date, and the second installment payment Fifteen Thousand Dollars ($15,000) shall be due no later than the one (1) year anniversary of the Effective Date. Installment payments shall be payable to Mission Resource Conservation District and shall be made within thirty (30) days after the Effective Date. Payments shall be addressed to Mission Resource Conservation District, Attn: Darcy G. Cook, 1588 South Mission Road, Suite 100, Fallbrook, California 92028.

**E.    Reimbursement of Attorneys' Fees and Costs**

**52.**    STS shall pay a total of Seventy-Five Thousand Dollars ($75,000.00) to Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, and reasonable attorneys' fees incurred by investigating and preparing the lawsuit and negotiating this Consent Decree. Payment shall be made to Orange County Coastkeeper and delivered to Orange County Coastkeeper, Attn: Sarah Spinuzzi, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626 within thirty (30) days of the Effective Date.

**V.    DISPUTE RESOLUTION**

**A.    Continuing Jurisdiction**

**53.**    This Court shall retain jurisdiction over this matter until the Termination Date defined above for the purposes of implementing and enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree, unless a Party files and is granted a timely motion requesting an extension of time for the Court to retain jurisdiction. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**B.    Meet and Confer**

**54.**    A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the

15

matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute informally over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

**C.   Dispute Resolution**

**55.**    If the Settling Parties cannot resolve a dispute by the end of the meet and confer process, the Parties may agree to enter into the Alternative Dispute Resolution process provided by the United States District Court for the District of California, including but not limited to stipulating to a hearing before a Magistrate Judge.

**56.**    If the Settling Parties cannot resolve a dispute by the end of the Alternative Dispute Resolution process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion if requested by any Settling Party.

**56.1.**   Burden of Proof. In any dispute resolution proceeding, the moving party shall have the burden of demonstrating compliance or non-compliance with the terms of the Consent Decree.

**56.2.**   Enforcement Fees and Costs. Litigation costs and fees incurred in conducting a meet and confer session(s) or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing party in accordance with the standard established by § 505 of the Clean Water Act, 33 U.S.C. §§ 1365 and 1319, and case law interpreting that standard.

**VI.   MUTUAL RELEASE OF LIABILITY, DISPUTE RESOLUTION AND COVENANT NOT TO SUE**

**A.   Plaintiff's Release**

**57.**    Upon the Effective Date of this Consent Decree, Plaintiff, on their own behalf and on behalf of their current and former officers, directors, employees, and each

of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, STS and Financial Guarantor (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from and waive all claims alleged in the Notice Letter and Complaint up to the Effective Date of this Consent Decree.

**B.   Parties' Release**

58.    Unless specifically provided for in this Consent Decree, the Settling Parties, on their own behalf and on behalf of their current and former officers, directors, employees, and each of their successors and assigns, and their agents, and other representatives release all persons including, without limitation, all other Settling Parties to this Consent Decree (and each of their direct and indirect parent and subsidiary companies and affiliates, and their respective current and former officers, directors, members, employees, shareholders, and each of their predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives) from any additional attorney's fees or expenses related to the resolution of this matter.

59.    Nothing in this Consent Decree limits or otherwise affects any Party's right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the State Board, Regional Board, EPA, or any other administrative body on any other matter relating to STS' compliance with the Clean Water Act occurring or arising after the effective date of this Consent Decree.  However, Plaintiff, their employees, officers, members, and directors shall not be entitled to commence any civil action under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), against STS, for any violation which occurred during the period of time when this Consent Decree was in force that was the subject of either the Notice of Intent to Sue, the Complaint or this Consent Decree.

17

## VII.  **FORCE MAJEURE**

**60.**   Party shall not be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Settling Party's control as defined by the Force Majeure provisions herein, which includes any act of god, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, sabotage, pandemic or terrorism; restraint by court order or public authority or agency; inability to proceed due to pending litigation under the California Environmental Quality Act; action or non-action by, or inability to obtain the necessary authorizations, approvals, or permits from, any governmental agency; or inability to obtain equipment or materials from the marketplace if such materials or equipment are not reasonably available, though the cost of such material or equipment is not a factor in whether it is reasonably available. Impossibility and/or Force Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the impossibility or Force Majeure event and which by exercise of due diligence has been unable to overcome the failure or performance. Delay in compliance with a specific obligation under this Consent Decree due Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all of the financial obligations required under this Consent Decree.

**61.**   If Defendant claims compliance was or is impossible as defined by the Force Majeure provisions herein, it shall notify Plaintiff in writing as soon as possible, but in no event more than five (5) business days of the date that Defendant learns of the event or circumstance that caused or would cause a violation of this Consent Decree (hereinafter referred to as the "Notice of Nonperformance").

**62.**   Within ten (10) days of sending the Notice of Nonperformance, Defendant shall send Plaintiff a detailed description of the reason for the nonperformance and the

specific obligations under the Consent Decree that are or have been affected by the Force Majeure. It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant to prevent or minimize the delay, the schedule by which the measures shall be implemented, and the anticipated date of compliance. Defendant shall adopt all reasonable measures to avoid and minimize such delays.

63.     The Settling Parties shall meet and confer in good faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible as defined by the Force Majeure provisions herein due to an event or issue in paragraph 42.a, despite the timely good faith efforts of Defendant, new deadlines shall be established.

64.     If Plaintiff disagrees with Defendant's notice of impossibility as defined by the Force Majeure provisions herein, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either party shall have the right to invoke the dispute resolution procedure pursuant to Article VI. In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by impossibility and/or Force Majeure and the extent of any delay attributable to such circumstances.

## VIII.  <u>MISCELLANEOUS PROVISIONS</u>

### A.     <u>No Admission of Liability</u>

65.     Neither this Consent Decree, the implementation of additional BMPs, nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. STS maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

**B.**     **Assignment**

**66.**     Subject only to the express conditions contained in this Settlement Agreement, all of the rights, duties and obligations contained in this Settlement Agreement shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a new successor or assign (a "Transferee") will continue equestrian operations at the Facility, Defendant shall notify Coastkeeper ten (10) days in advance of the proposed transfer (the "Transfer Notice") and within ten (10) days following the Transfer Notice, Defendant will provide Coastkeeper with a written assignment duly executed and acknowledged by the Defendant and the Transferee assigning Defendant's obligations under this Consent Decree to Transferee

**C.**     **Construction**

**67.**     The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms are defined in the MS4 Permit, the Clean Water Act, or specifically herein.

**D.**     **Administrative Delay**

**68.**     STS shall diligently pursue any approvals required for compliance with this Consent Decree. Should such diligent pursuit of approvals required for compliance be unavailing due to actions by or inaction on the part of any governmental or regulatory entity with jurisdiction over the STS, and the STS reasonably demonstrates these delays are not attributable by any action or inaction on the part of the STS, any relevant compliance deadlines set forth in this Consent Decree shall be tolled until such time as Parties agree to an alternative means of compliance with the Consent Decree pursuant to the Force Majeure clause contained herein.

**E.**     **Choice of Law**

**69.**     The laws of the United States shall govern this Consent Decree.

**F.**     **Severability**

Consent Decree                                                Civil Case No. 8:20-cv-01694

70.    In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

**G.    <u>Correspondence</u>**

71.    Unless specifically provided for in this Consent Decree, all notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by U.S. mail or electronic mail to all parties identified below:

<u>If to Plaintiff Coastkeeper:</u>

**Orange County Coastkeeper**
Attn: Sarah Spinuzzi
3151 Airway Avenue, Suite F-110
Costa Mesa, CA 92626
Email: sarah@coastkeeper.org

<u>If to Equestrian Services II d/b/a/ Sycamore Trails Stables:</u>

**(a)    Equestrian Services II, Inc.**
Attn: Rick Hanson
26282 Oso Road
San Juan Capistrano, CA 92675
Email: rickhanson59@yahoo.com

**(b)    Varco & Rosenbaum Environmental Law Group LLP**
Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 W. Broadway, Suite 1900
San Diego, CA 92101
Email: swr@envirolawyer.com

<u>If to Financial Guarantor:</u>

**(a)    HFT1, LLC**
Attn: Roxanne Hanson-Euhus
Agent for Service of Process
19327 Camino del Aguila
San Juan Capistrano, CA 92675
Email: rickhanson59@yahoo.com

**(b)    Varco & Rosenbaum Environmental Law Group LLP**
Environmental Law Group LLP
Attn: S. Wayne Rosenbaum
225 W. Broadway, Suite 1900
San Diego, CA 92101
Email: swr@envirolawyer.com

**72.** Notifications of communications shall be deemed submitted three (3) business days after having been sent via U.S. mail or the day of sending notification or communication by electronic mail. Any change of address or addresses shall be communicated in the manner described above for giving notices

**H.** **Effect of Consent Decree**

**73.** Except as provided herein, Plaintiff does not, by their consent to this Consent Decree, warrant or aver in any manner that STS' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of STS to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

**I.** **Counterparts**

**74.** This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a pdf signature, or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

**J.** **Modification of Consent Decree**

**75.** This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties. If any Settling Party wishes to modify any provision of this Consent Decree, the Settling Party must notify the other Settling Party in writing at least twenty-one (21) days prior to taking any step to implement the proposed change.

**K.** **Full Settlement**

**76.** This Consent Decree constitutes a full and final settlement of this matter.

**L.** **Full Integration**

**77.** This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties

22

and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

**M.    Authority of Counsel**

**78.**    The undersigned representatives for Plaintiff and STS each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

**N.    Authority of Parties**

**79.**    The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

**80.**    The Settling Parties, including any successors or assigns, agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

**81.    IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

**APPROVED AS TO CONTENT**

Dated:_____        By:_____
                                 Garry Brown, Executive Director
                                 Orange County Coastkeeper

Dated:_____        By:_____
                                 Rick Hanson, President
                                 Equestrian Services II, Inc.
                                 d/b/a Sycamore Trails Stables

Dated:_____        By:_____
                                 Rick Hanson, Member
                                 HFT1, LLC

23

**APPROVED AS TO FORM**

Dated:_____    By:_____
                                  Sarah Spinuzzi, Senior Staff Attorney
                                  Orange County Coastkeeper
                                  Attorney for Plaintiffs

Dated:_____    By:_____
                                  S. Wayne Rosenbaum, Partner
                                  Varco & Rosenbaum Environmental Law Group
                                  Attorney for Equestrian Services II, Inc. and
                                  HFT1, LLC

**IT IS SO ORDERED.**


Dated: November 25, 2020_____By:_____
                                  Hon. James V. Selna
                                  United States District Court Judge

Consent Decree                                    Civil Case No. 8:20-cv-01694